UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARIN HOLDINGS                                          CIVIL ACTION
INTERNATIONAL LIMITED

VERSUS                                                  NO. 18-6490

FRONTERA OFFSHORE, INC.                                 SECTION: M (2)

## ORDER & REASONS

Before the Court is a motion by defendant Frontera Offshore, Inc. ("Frontera Inc.") to dismiss for lack of personal jurisdiction and failure to state a claim or, alternatively, to dismiss or stay under the doctrine of *forum non conveniens*,[1] to which plaintiff Marin Holdings International Limited ("Marin") responds in opposition,[2] and in further support of which Frontera Inc. replies.[3] Having considered the parties' memoranda and the applicable law, the Court grants the motion to dismiss, as to the claims for conversion and unjust enrichment, and otherwise denies the motion.

## I.    BACKGROUND

This matter involves contract and property disputes. Marin is a corporation specializing in maritime and pollution control services, including "subsea intervention, asset recovery, and offshore support."[4] Marin leases its services and patented equipment for use by other companies on offshore projects.[5] Marin is incorporated under the laws of Scotland and maintains a headquarters in Belle Chasse, Louisiana.[6]

---

[1] R. Doc. 8.
[2] R. Docs. 13 & 18.
[3] R. Docs. 23 & 26.
[4] R. Doc. 4 at 2.
[5] *Id.*
[6] *Id.* at 1.

Frontera Inc. is incorporated under the laws of Texas and was formed in 2007; its affiliate, Frontera Offshore Sociedad Anonima de Capital Variable ("Frontera S.A. de C.V."), is incorporated under the laws of Mexico and was formed in 2017.[7] Thomas Bradley McNeill ("Brad McNeill") is the chief executive officer ("CEO") of both Frontera Inc. and Frontera S.A. de C.V. and the registered agent of Frontera Inc.[8]

In 2013, Brad McNeill travelled to Louisiana for a convention and met Marin's then-president.[9] Marin states that, during the meeting, Brad McNeill provided Marin with his business card which listed his company as Frontera Inc.[10] The parties discussed Frontera Inc.'s potential purchase of some of Marin's equipment, and although the parties did not reach an agreement, they kept in touch.[11]

In April 2017, Brad McNeill's brother, James Jefferson McNeill ("Jeff McNeill"), contacted Marin, in his capacity as project director for "Frontera," to solicit necessary equipment and services for an anticipated offshore oilfield project in Mexico (the "Permaducto Project").[12] Between April 10 and April 14, 2017, the parties negotiated what Marin alleges to be a contract for lease of equipment and services.[13] Negotiations were primarily conducted in-person between Jeff McNeill and Marin personnel at Marin's headquarters in Louisiana, as well as through emails, telephone calls, and document exchanges.[14] Marin alleges that "Jeff McNeill told Marin that he had been authorized by Brad McNeill to represent Frontera [Inc.] and to speak for Frontera [Inc.] as its representative."[15]

---

[7] R. Docs. 4 at 1; 8-1 at 5; 8-4 at 1-2, 6; 13 at 4.
[8] R. Doc. 4 at 1-3.
[9] R. Doc. 13 at 2-3.
[10] *Id.*; R. Doc. 13-1 at 16. Frontera S.A. de C.V. was not formed until 2017. R. Doc. 8-4 at 6.
[11] R. Docs. 13 at 2-3; 13-1 at 2-3.
[12] R. Docs. 4 at 3; 8-1 at 1-2.
[13] R. Doc. 4 at 8.
[14] *Id.* at 3-7.
[15] *Id.* at 4.

The parties dispute whether Jeff McNeill acted on behalf of Frontera Inc. or Frontera S.A. de C.V. in the negotiations and, thus, which entity is obligated by any alleged agreements. Frontera Inc. contends that it is an inactive corporation and "was in no way involved"[16] in the events forming the basis of this dispute, whereas Marin alleges that Frontera Inc. now engages in a "legal shell game" concerning the two entities to avoid liability.[17]

Many of the documents that were exchanged and signed during negotiations listed only "Frontera Offshore," without a designation as between the Texas or Mexico entity, but transmittal documents listed Frontera Inc.'s business address in Texas.[18] A "Financial Risk Assessment" ("FRA") document, provided by Marin and signed by Jeff McNeill, included references to Frontera Inc. and Frontera S.A. de C.V.[19] According to Marin, Jeff McNeill added the name "Frontera S.A. de C.V." to the document in two places by handwritten edits, but he did not remove the references to Frontera Inc. in either instance.[20] The parties also signed a letter of intent, provided by Marin, identifying "Frontera Offshore S.A. de C.V. and affiliates ('Frontera') Mexico/USA a company organised and existing under the laws of Mexico …. For purposes of the agreement extends [sic] to the affiliate companies of Frontera Offshore S.A. DE C.V. (Mexico), including … Frontera Offshore, Inc. (USA) …."[21] Additionally, Marin's standard terms and conditions, which were allegedly agreed to, but never signed by a representative of any Frontera Offshore entity, were addressed to "Frontera Offshore" at Frontera Inc.'s registered address in Texas.[22] Finally, Marin's April 13, 2017 commercial invoice and delivery note itemizing the values and weights of equipment to be delivered to Mexico, pursuant to the alleged

---

[16] R. Doc. 8-1 at 5.
[17] R. Doc. 13 at 1.
[18] *Id.* at 5.
[19] R. Doc. 4 at 6; 13-1 at 62. In April 2017, Brad McNeill produced corporate documents pursuant to Marin's request in the FRA. R. Docs. 4 at 11; 23 at 4. Frontera Inc. asserts the documents produced were records of only Frontera S.A. de C.V., rather than Frontera Inc. R. Doc. 23 at 4.
[20] R. Doc. 13 at 7.
[21] R. Doc. 4 at 7.
[22] R. Docs. 4 at 6; 13 at 7 n.16.

contract, specify delivery to "Frontera" at Frontera S.A. de C.V.'s address in Mexico.[23]  Both the invoice and the delivery note were signed by Jeff McNeill on behalf of "Frontera Offshore S.A. de C.V." – a designation added by hand under his signature.[24]

At the conclusion of Jeff McNeill's visit to Louisiana, on April 14, 2017, Marin shipped its equipment to Frontera S.A. de C.V. in Mexico.[25]  Although the Permaducto Project never materialized, Marin alleges that under the parties' contract Frontera Inc. owes it the costs associated with Marin's shipment, "decanting," and rental fees of the equipment and personnel in Mexico, and that Frontera Inc. had expressed its intent to pay such costs.[26]

Marin further alleges that, after the Permaducto Project was awarded to another, Jeff McNeill requested that Marin's equipment remain in Mexico for future projects.[27]  On May 26, 2017, the parties allegedly entered into a separate oral agreement (the "May 26 Agreement") which conditionally permitted Frontera Inc. to keep Marin's equipment in Mexico for up to one year.[28]  As part of this agreement, Marin alleges that Frontera Inc. agreed to:

> (1) immediately pay the outstanding amounts due to Marin under the [earlier] Contract, (2) store Marin's equipment in a safe location at no cost to Marin, (3) acquire insurance to fully cover all of the equipment while it was stored, (4) permit Marin's team to carry out all maintenance, repairs, and servicing of the equipment, tooling, and systems, and (5) permit Marin personnel to return to Marin's Belle Chasse location for additional training that could assist in delivering other projects to benefit Marin or potentially both Marin and Frontera together.[29]

---

[23] R. Docs. 4 at 7; 13-1 at 78.
[24] *Id.*
[25] R. Doc. 4 at 10.
[26] *Id.* at 13.
[27] *Id.* at 14.
[28] *Id.*
[29] *Id.* at 25.

Frontera Inc. disputes, and has failed to pay, Marin's invoice related to the Permaducto Project.[30] Marin contends that Frontera Inc.'s failure to pay the invoice is a breach of the parties' initial contract as well as their May 26 Agreement.[31]

Nevertheless, Marin's equipment remained in Frontera S.A. de C.V.'s custody in Mexico, and, in December 2017, Frontera S.A. de C.V. used Marin's equipment on a job contracted with a third-party company, Vector. Marin alleges that its equipment was damaged during the Vector job due to Frontera S.A. de C.V.'s improper use of the equipment.[32] Marin subsequently issued an invoice to Frontera Inc. for equipment and services for the Vector job, which invoice neither Frontera entity has paid. Frontera Inc. again disputes this invoice.[33]

The parties' relationship deteriorated thereafter.[34] In February 2018, Marin requested the return of some of its equipment for use on a job in the United States unrelated to any business with Frontera Inc.[35] Marin alleges that, in response, Frontera S.A. de C.V. presented Marin with an indemnity agreement, and then refused to return the equipment because Marin declined to sign the indemnity agreement Frontera S.A. de C.V. had drafted.[36] When Marin tried to transport its own equipment to a repair facility within Mexico, Jesus Lopez ("Lopez"), an employee of Frontera S.A. de C.V., allegedly acted to prevent the transport of Marin's equipment and arranged for the arrest of Marin's transport agent.[37]

On March 14, 2018, Marin allegedly terminated its business dealings with Frontera Inc. in writing, effective April 13, 2018, and sought the return of all its equipment to Louisiana.[38] Marin's equipment was not returned, so Marin arranged for a Mexican shipping company to

---

[30] R. Doc. 8-1 at 4.
[31] R. Doc. 4 at 20.
[32] *Id.* at 15.
[33] R. Docs. 4 at 16; 8-1 at 3, 4.
[34] R. Doc. 8-1 at 5.
[35] R. Doc. 4 at 16.
[36] *Id.* at 16-17.
[37] *Id.* at 17.
[38] *Id.* at 17-18.

transport its equipment back to its headquarters.[39]  Frontera S.A. de C.V. reported to the Mexican authorities the shipping company's attempt to recover Marin's equipment, fearing liability under Mexican law if a company other than Frontera S.A. de C.V., the legal importer, possessed Marin's equipment within Mexico.[40]  As a result, Marin's equipment was seized by Mexican governmental authorities and returned to the Frontera S.A. de C.V. yard.[41]  Frontera Inc. asserts that, at present, "no party may take any action with respect to use, relocation, removal, or exportation of Marin's equipment" pending a disposition order from the Mexican authorities.[42]  Thus, none of the equipment Marin originally shipped to Mexico has been returned to Marin, nor has either Frontera entity paid Marin's invoices.[43]

Marin filed this action against Frontera Inc., claiming (1) amounts owed on an open account, (2) failure to pay invoices, (3) breach of contract, (4) unjust enrichment, (5) breach of the May 26 Agreement, and (6) conversion.[44]  Frontera S.A. de C.V. is not a party to this suit.

## II.    PENDING MOTION

Frontera Inc. filed the instant motion to dismiss for lack of personal jurisdiction and failure to state a claim or, alternatively, to dismiss or stay under the doctrine of *forum non conveniens*.[45]  In the motion, Frontera Inc. contends that it is not subject to general or specific personal jurisdiction in Louisiana, insisting that it is not at home in Louisiana and has no contacts within the state because Marin transacted business with its similarly-named affiliate, Frontera S.A. de C.V., rather than Frontera Inc., an inactive corporation.[46]  Further, Frontera Inc. argues that, under Rule 12(b)(6), Marin fails to state claims against Frontera Inc. for this and

---

[39] *Id.* at 18.
[40] R. Doc. 8-1 at 5.
[41] *Id.*
[42] R. Docs. 4 at 18-19; 8-1 at 5.
[43] R. Docs. 4 at 19, 20; 8-1 at 4-5.
[44] R. Doc. 1; *see also* R. Doc. 4 (Marin's amended complaint).
[45] R. Doc. 8-1.
[46] *Id.*

other reasons[47]  Alternatively, Frontera Inc. argues that Mexico is the appropriate forum for this litigation and seeks dismissal under the doctrine of *forum non conveniens* because Frontera S.A. de C.V. is a Mexican corporation, the transaction had its locus in Mexico, and Marin's equipment is presently in Mexico under the control of Mexican governmental authorities.[48]

Marin opposes the motion to dismiss, arguing that it properly named Frontera Inc. as the obligated party because Marin negotiated with individuals acting as representatives of Frontera Inc.[49]  Marin argues that Frontera Inc. is subject to specific personal jurisdiction because this dispute arises out of an alleged contract (1) for which Frontera Inc. solicited Marin in Louisiana, (2) that a Frontera Inc. representative negotiated in-person within the state, and (3) performed in part in Louisiana.[50]  Finally, Marin argues that Louisiana is the appropriate forum for litigation based on an alleged choice-of-law provision as well as the convenience of the parties – a Houston-based corporation and a Scottish corporation headquartered in Louisiana – so dismissal under the doctrine of *forum non conveniens* is not warranted.[51]

## III.  LAW & ANALYSIS

### A.  The Rule 12(b)(2) Motion

#### 1.  Personal Jurisdiction Standard

Federal Rule of Civil Procedure 12(b)(2) confers a right to dismissal of claims against a defendant where personal jurisdiction is lacking.  Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an

---

[47] *Id.*

[48] *Id*.  Frontera Inc. also argues in the alternative for dismissal under Rule 12(d).  *Id.*  Where a court considers extrinsic evidence outside the pleadings on a Rule 12(b)(6) motion, and all parties have been given reasonable opportunity to present evidence, then Rule 12(d) requires the court to treat the motion as a motion for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).  At this early stage of the litigation, the Court declines to convert the instant motion into a motion for summary judgment.

[49] R. Doc. 13 at 2-11.  As an alternative to dismissal, Marin also requests leave to amend the complaint to add Frontera S.A. de C.V. as a party defendant or to clarify claims.  *Id.*

[50] *Id.* at 11-14.

[51] *Id.* at 17-20.

adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal quotation marks omitted). A federal court, sitting in diversity, may exercise personal jurisdiction over a non-resident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction comports with due process under the United States Constitution. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). Louisiana's "long-arm statute authorizes the exercise of personal jurisdiction to the limits of due process." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 365 (5th Cir. 2010). Hence, "the Court need only consider whether the exercise of jurisdiction in this case satisfies federal due process requirements." *Embry v. Hibbard Inshore, LLC*, 2019 WL 2744483, at *2 (E.D. La. July 1, 2019) (citing *Dickson Mar. Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999)).

An individual's liberty interest is protected by federal due process through the requirement that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)). For purposes of personal jurisdiction, the due-process inquiry determines whether the defendant has purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" with the forum, and whether the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be general or specific. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). For a court to exercise general jurisdiction, the defendant's contacts with the forum must be "so continuous and systematic" as to render the defendant "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). To exercise specific

jurisdiction, a court must determine:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*,
> whether it purposely directed its activities toward the forum state or purposefully
> availed itself of the privileges of conducting activities there; (2) whether the
> plaintiff's cause of action arises out of or results from the defendant's forum-
> related contacts; and (3) whether the exercise of personal jurisdiction is fair and
> reasonable.

*Seiferth*, 472 F.3d at 271 (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374,

378 (5th Cir. 2002)). Upon establishing the first two factors, the burden then shifts to the

defendant to demonstrate that an exercise of personal jurisdiction would be unfair or

unreasonable. *Burger King*, 471 U.S. at 477 (citing *World-Wide Volkswagen Corp. v. Woodson*,

444 U.S. 286, 292 (1980)).

A plaintiff need only present a *prima facie* case of personal jurisdiction when a court

rules on a Rule 12(b)(2) motion without an evidentiary hearing. *Walk Haydel & Assocs., Inc. v.

Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). In resolving personal jurisdiction,

the court may review "pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits,

any part of the record, and any combination thereof." *Command-Aire Corp. v. Ontario Mech.

Sales & Serv. Inc.*, 963 F.2d 90, 95 (5th Cir. 1992) (citing *Stuart v. Spademan*, 772 F.2d 1185

(5th Cir. 1985)). The plaintiff's uncontroverted allegations must be taken as true, and "conflicts

between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor."

*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *D.J. Invs., Inc.

v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)). But a court

is not required "to credit conclusory allegations, even if uncontroverted." *Panda Brandywine

Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

## 2.    Specific Personal Jurisdiction Analysis

Marin does not argue general jurisdiction over Frontera Inc. but asserts that specific jurisdiction should be exercised because this lawsuit primarily arises out of Frontera Inc.'s alleged in-forum activities.[52]   Marin alleges that Frontera Inc. solicited business at Marin's headquarters in Louisiana, Frontera Inc. negotiated and entered into a contract in Louisiana, and the contract was partially performed in Louisiana.[53]   Thus, the Court only addresses specific jurisdiction.

Frontera Inc. contends that the alleged contacts were those of Frontera S.A. de C.V., not Frontera Inc., and that Frontera Inc. is an ostensibly "inactive" corporation[54] having no contacts with Louisiana.[55]   However, Marin alleges that the individuals who solicited its business and negotiated and executed agreements identified themselves as representatives of, and acted on behalf of, Frontera Inc.[56]   Specifically, Jeff McNeill approached Marin in Louisiana seeking equipment and services and allegedly "told Marin that he had been authorized by Brad McNeill to represent Frontera [Inc.] and to speak for Frontera [Inc.] as its representative."[57]   And since 2013, Marin knew Brad McNeill as Frontera Inc.'s CEO.[58]   During negotiations, Jeff McNeill communicated with Brad McNeill and "kept him thoroughly and completely apprised of all aspects of the discussions with Marin."[59]   Additionally, while many of the written instruments

---

[52] R. Doc. 13-1 at 11.

[53] *Id.*

[54] Frontera Inc. alleges that it is an "inactive" corporation but does not argue that the corporation lacks legal capacity to be sued or form contracts.  *See* Tex. Bus. Orgs. Code § 2.101 (conferring general powers to Texas corporations to sue and be sued and make contracts and guarantees).  Under Rule 9, where a party raises the issue of legal capacity to sue or be sued the "party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge."  Fed. R. Civ. P. 9(a)(2).  Conversely, Marin argues that Frontera Inc. was an active corporation at the time of contracting.  R. Doc. 13 at 4.  Marin also includes a Texas Secretary of State business record that shows Frontera Inc. as an existing corporation as of February 5, 2019.  R. Doc. 13-1 at 17.  Thus, any contention that Frontera Inc. is inactive and, therefore, cannot be obligated by an agreement between parties or a party to a lawsuit, will not be considered here.

[55] R. Doc. 8-1.

[56] R. Doc. 4 at 4.

[57] *Id.*

[58] *Id.*

[59] *Id.*

exchanged between the parties ambiguously identify "Frontera Offshore," without distinguishing between the United States and Mexican entities, Frontera Inc. is expressly listed on some instruments and others list Frontera Inc.'s registered address in Texas (2523 Westgate, Houston, Texas 77019).[60] Most notably, while in Belle Chasse, Jeff McNeill executed the FRA on behalf of Frontera after deleting the word "Investment" from a reference to "Frontera Offshore Investment, Inc.," retaining the corrected name of the Texas entity, but interlineating "Frontera Offshores S.A. de C.V." as an additional party. And the signed letter of intent expressly includes both Frontera Inc. and Frontera S.A. de C.V. among the contracting parties. These documents may suffice to establish that Frontera Inc. was at least one of the parties involved in the transaction, but the Court need not reach this question at this time. The most that can be said for Frontera Inc.'s position that personal jurisdiction is lacking is that it is unclear on the record before the Court which Frontera entity the McNeills were representing at any given time.

Several affidavits and exhibits were filed by both parties directed to this issue of personal jurisdiction.[61] Frontera Inc.'s affidavits of Brad McNeill and Jeff McNeill state that all of their interactions with Marin were conducted on behalf of Frontera S.A. de C.V.[62] Marin's affidavits of its CEO, coordinator of special operations and projects, chief financial officer, and project engineer, assert that the McNeills represented that they were acting on behalf of Frontera Inc. in all of their negotiations and transactions with Marin.[63] The affidavit of Marin's CEO states that business relations between the parties began in 2013, prior to the existence of Frontera S.A. de C.V., when Brad McNeill presented a Frontera Inc. business card to Marin's then-president at a conference in Louisiana.[64] And they culminated in 2017 with Jeff McNeill's multi-day stay in

[60] R. Docs. 4 at 3-7; 13 at 7; 13-1 at 1-85.
[61] R. Docs. 8-3 (Lopez); 8-4 (Brad McNeill); 8-5 (Jeff McNeill); 13-1 (George Stroud); 13-2 (Bonny Hazen); 13-4 (Kathleen Lawson); 13-5 (Thomas Smith); 23-4 (Lopez Supplemental); 23-5 (Brad McNeill Supplemental); 23-6 (Jeff McNeill Supplemental).
[62] R. Docs. 8-4; 8-5; 23-5; 23-6.
[63] R. Docs. 13-1; 13-2; 13-4; 13-5.
[64] R. Doc. 13-1 at 2, 16.

Belle Chasse to negotiate and execute documents Marin now says comprise part of the contractual relationship forged during this period. Conflicting affidavits do nothing to resolve the disputed fact of the McNeills' representative capacities. Because conflicts must be resolved in the plaintiff's favor on a motion to dismiss, the Court assumes, for purposes of personal jurisdiction at this time, that the McNeills were acting as representatives of Frontera Inc. *See, e.g.*, *C & G Welding, Inc. v. OPI Int'l Nigeria, Ltd.*, 2015 WL 750950, at *3 (E.D. La. Feb. 19, 2015) (exercising specific personal jurisdiction over a foreign corporation that negotiated in the forum and assumed responsibility for payment of invoices, even though it was unclear whether the representatives were acting in the capacity of the foreign corporation or another obligated party).

Applying this assumption, Marin has established a *prima facie* case that Frontera Inc. has sufficient contacts with the State of Louisiana for this Court to exercise specific personal jurisdiction over Frontera Inc. Marin alleges that contract negotiations took place in-person in Louisiana, at least in part, at Marin's Louisiana headquarters, and contact continued with Marin personnel at the Louisiana office.[65] Marin further alleges that contract performance required Marin to collect, prepare, package, and ship its equipment from Belle Chasse, Louisiana, to Mexico and that all equipment was to be returned to Louisiana.[66] The question becomes, then, whether, in light of Frontera Inc.'s contacts with the Louisiana forum, the exercise of personal jurisdiction over Frontera Inc. is fair and reasonable.

Although a contract with a resident of a forum alone does not confer specific personal jurisdiction, Frontera Inc. deliberately entered Louisiana to create continuing obligations with substantial connection to the forum and availed itself of the benefits and protections of the forum. *See Burger King*, 471 U.S. at 478. Frontera Inc. purposefully directed its activities

---

[65] *Id.* at 3-5.
[66] *Id.* at 4, 9.

toward Louisiana when it approached Marin at Marin's headquarters in Belle Chasse in April of 2017 seeking equipment, services, and personnel for the Permaducto Project, and negotiated and entered into a business deal with Frontera Inc. that was partially performed in Louisiana.[67] Indeed, even where a non-resident contracting party never sets foot in the forum state, personal jurisdiction may be properly exercised. *Id.* Frontera Inc.'s intentional and on-going business with Marin was surely beyond "random, fortuitous, or attenuated contacts" as required by due process. *Id.* at 475. Frontera Inc.'s own activity was sufficient to provide the company with fair warning that it may be haled into a Louisiana court should it breach a contract or engage in other actionable conduct. Therefore, it is reasonable to require Frontera Inc. to submit to the burdens of litigation before this Court in this district in Louisiana. *See id.*

Frontera Inc. does not contend that the exercise of personal jurisdiction over it would be unreasonable.[68] However, as a Houston-based corporation, whose employees had previously travelled to Louisiana on business, the Court does not see how litigation in Louisiana would be so burdensome as to overcome a presumption of reasonableness. Therefore, the exercise of specific personal jurisdiction over Frontera Inc. comports with constitutional due process, and Frontera Inc.'s motion to dismiss for lack of personal jurisdiction is denied.

### B. The Rule 12(b)(6) Motion

#### 1. The Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must

---

[67] R. Doc. 4 at 3.
[68] R. Docs. 8-1 & 23.

"'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*.  The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Id.*  However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins*., 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist*., 675 F.3d 849, 854 (5th Cir. 2012) (internal quotation marks and citation omitted)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

Frontera Inc. seeks dismissal of all of Marin's claims, first contending that Marin improperly named the obligated party, and thus, failed to state any claim against Frontera Inc., and then contending that Marin has failed to satisfy the pleading requisites in other ways for certain of its claims. The Court addresses each of Marin's claims in turn.

## 2. Open Account Claim (Count One)

Louisiana law[69] defines an "open account" as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. 'Open account' shall include debts incurred for professional services …." La. R.S. 9:2781(D). "When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant … when judgment on the claim is rendered in favor of the claimant." *Id.* 9:2781(A).

Marin alleges that it provided equipment and services as agreed upon by the parties, "with the expectation of recurrent future business dealings over a period of time," with no firm termination date, and that Marin was to periodically invoice Frontera Inc.[70] Indeed, Marin alleges that although the Permaducto Project did not materialize, Marin left its equipment in Mexico in anticipation of Frontera Inc.'s using the equipment on future projects.[71] Marin alleges that it "provided Frontera [Inc.] with a line of credit to use its equipment and services and pay for them after the fact when invoiced,"[72] and that Frontera Inc. presently owes $73,867.88 on two separate invoices for equipment and services, which are over thirty days past due.[73] These allegations, taken as true, adequately plead an open-account claim.

However, consistent with its position on personal jurisdiction, Frontera Inc. argues that it was "in no way involved" with the underlying business transactions and, therefore, is improperly

---

[69] Frontera Inc.'s Rule 12(b)(6) motion rests largely, if not solely, on the contention that Marin named the wrong Frontera entity. R. Docs. 8-1 & 23. Although Frontera Inc. submits that Mexican law applies to all claims, Frontera Inc. applied Louisiana law in its analysis, arguing that "even under Louisiana law" Marin failed to state claims. R. Doc. 23 at 10. Marin contends that Louisiana law is applicable under the choice-of-law provision in the alleged contract. Therefore, for purposes of the instant motion, the Court applies Louisiana law in its Rule 12(b)(6) analysis of Marin's individual claims.

[70] R. Doc. 4 at 20.

[71] *Id.*

[72] *Id.*

[73] *Id.* Marin's complaint constitutes a demand as required under La. R.S. 9:2781(A). Marin's complaint was filed on July 3, 2018. R. Doc. 1.

named as the obligated party.[74]  As discussed above, because both Frontera entities are listed on transactional documents and the representative capacity of the McNeills is disputed, there is a question of fact as to whether Frontera Inc. or Frontera S.A. de C.V., or both, may be the obligated party or parties under the alleged agreements (the resolution of which is beyond the scope of a motion to dismiss).  Assuming the veracity of Marin's allegations against Frontera Inc., as is required at this stage of the litigation, Marin has adequately pleaded a plausible open-account claim against Frontera Inc.  *See Iqbal*, 556 U.S. at 679.  Therefore, Frontera Inc.'s motion to dismiss for failure to state a claim is denied as to Marin's claim on open account.

### 3.  Breaches of Contracts (Counts Two, Three, and Five)

To succeed on a breach-of-contract claim in Louisiana, a plaintiff must show "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. App. 2011). Counts Two, Three, and Five of Marin's amended complaint encompass breach-of-contract claims against Frontera Inc.[75]

In Count Two, Marin alleges, in the alternative to an open-account claim, that Frontera Inc. was obligated to pay Marin's invoices under the parties' negotiated contract, that Frontera Inc. failed to do so timely, and that Marin suffers loss of payment as a result.[76]

In Count Three, Marin alleges that, under the parties' contract, Frontera Inc. was obligated to use Marin's equipment in accordance with Marin's recommended practices and procedures and Frontera Inc. was required to return Marin's equipment to Louisiana.[77]  Marin alleges that it delivered the equipment as agreed, but that Frontera Inc. damaged the equipment through improper use, failed to return the equipment, and failed to compensate Marin for the

---

[74] R. Doc. 13-1 at 5.
[75] R. Doc. 4.
[76] *Id.* at 20-21.
[77] *Id.* at 21-23.

equipment and services under the terms of the contract, among other breaches.[78] Marin further alleges that it has suffered damages as a result of Frontera Inc.'s breaches, including costs incurred for attempted recovery of the equipment and loss of business as a result of Frontera's failure to return the equipment.[79]

In Count Five, Marin alleges that Frontera Inc. breached the May 26 Agreement.[80] Marin alleges that Jeff McNeill orally consented to a conditional agreement on behalf of Frontera Inc. to keep Marin's equipment in Mexico for future jobs.[81] Marin alleges that, as part of the agreement, Frontera Inc. was to immediately pay the outstanding amounts due Marin under their prior contract, store Marin's equipment in a safe location at no cost to Marin, acquire insurance for the stored equipment, and allow Marin to perform maintenance and repairs on the equipment.[82] Although Marin's equipment remained in Mexico, Marin alleges that Frontera Inc. did not pay the outstanding invoices, nor permit Marin's team to carry out repairs of its equipment, thus, breaching the agreement and causing damage to Marin.[83]

Marin has sufficiently pleaded breach-of-contract claims against Frontera Inc. as to Counts Two, Three, and Five. Although a question of fact remains as to which Frontera entity Jeff McNeill represented at the time of the alleged agreements (the resolution of which is, again, beyond the scope of a motion to dismiss), the Court must assume the allegations of Marin's complaint to be true, and finds Marin's allegations plausibly state breach-of-contract claims against Frontera Inc. Therefore, Frontera Inc.'s motion to dismiss for failure to state a claim is denied as to Marin's Counts Two, Three, and Five.

---

[78] *Id.*
[79] *Id.*
[80] *Id.* at 25-26.
[81] *Id.* at 14.
[82] *Id.* at 25.
[83] *Id.*

#### 4. Unjust Enrichment (Count Four)

Louisiana Civil Code article 2298 provides the basis for an action based on unjust enrichment, or *action de in rem verso*. Article 2298 states: "A person who has been enriched without cause at the expense of another person is bound to compensate that person." The Louisiana supreme court has held that the five requirements for establishing a cause of action for unjust enrichment are:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff.

*Baker v. Maclay Props. Co.*, 648 So. 2d 888, 897 (La. 1995) (citations omitted). Article 2298 expressly states that the remedy of unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code art. 2298. A plaintiff is precluded from seeking recovery under a theory of unjust enrichment if it pleads another cause of action, regardless of whether the plaintiff is successful on the other theory of recovery. *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010). Thus, if the law provides the plaintiff with another remedy, the plaintiff "has failed to state a cause of action in unjust enrichment." *Id.*

Marin has not stated a valid claim against Frontera Inc. for unjust enrichment. The unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided. Marin has pleaded other plausible claims against Frontera Inc. that would entitle Marin to recover for the alleged impoverishment, if proved. Thus, Marin has other potential remedies at law, and the subsidiary claim for unjust enrichment must be dismissed. Therefore, Frontera Inc.'s motion to dismiss for failure to state a claim is granted as to Marin's claim for unjust enrichment.

### 5.    Conversion (Count Seven)[84]

Under Louisiana law:

> A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.

*Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998).

Marin has not alleged facts specific to Frontera Inc. to adequately plead a claim for conversion.    Whether or not Frontera Inc. assumed an obligation for the return of Marin's equipment, ultimately, Marin's equipment was in the custody of Frontera S.A. de C.V. in Mexico at the time of the alleged conversion, and Marin's allegations of improper retention of equipment describes actions of a non-party entity, Frontera S.A. de C.V.[85]  All conversion allegations relate to actions of Lopez, an employee of Frontera S.A. de C.V., or Frontera S.A. de C.V. generally.[86] Marin does not allege facts to identify that Frontera Inc. took possession or control of Marin's equipment in Mexico, that either Frontera Inc. instructed or controlled Frontera S.A. de C.V.'s actions or those of its employees with respect to the equipment, or that each Frontera entity should be responsible for the other's actions.  A party cannot be held liable for acts of conversion that it did not commit or participate in.  *See, e.g., Aerotek, Inc. v. Revenue Cycle Mgmt., Inc.*, 2012 WL 860373, at *6 (E.D. La. Mar. 13, 2012) (finding officer not liable for conversion where no evidence of participation in conversion).  Without pleading allegations of conduct specific to Frontera Inc. relating to conversion, Marin has not plausibly pleaded a conversion claim against Frontera Inc.  Therefore, Frontera Inc.'s motion to dismiss for failure to state a claim is granted as to Marin's claim of conversion.  At Marin's request, however, Marin is granted leave to

---

[84] Marin does not plead a "Count Six."  R. Doc. 4.
[85] *Id.* at 16-19, 26-27.
[86] *Id.*

amend its complaint to add Frontera S.A. de C.V. as a defendant or to clarify allegations related to Frontera Inc.'s conduct, if Marin has good grounds to do so.[87]

### C. Alternative Motion to Dismiss Under the Doctrine of *Forum Non Conveniens*

#### 1. *Forum Non Conveniens* Standard

"The doctrine of *forum non conveniens* allows a court to decline jurisdiction, even when the case is properly before the court, if the case may be tried in another forum more conveniently." *KFC Corp. v. Iron Horse of Metairie Rd., LLC*, 2018 WL 3632356, at *4 (E.D. La. July 31, 2018) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008)). The "doctrine of *forum non conveniens* proceed[s] from [the] premise [that] ... [i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996).

> The doctrine allows dismissal or transfer of a case when "the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else." *In re Volkswagen*, 545 F.3d at 313 n.8 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Because the doctrine "not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but [also] makes it possible for him to lose out completely," it is subject to "careful limitation." *Id*. In deciding a motion to transfer for *forum non conveniens*, a court is not limited to the allegations in the complaint, but may consider all of the evidence before it. *See Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 158-59 (2d Cir. 1980) (en banc) ("[I]t is the well-established practice ... to decide [*forum non conveniens*] motions on affidavits.").

*KFC Corp.*, 2018 WL 3632356, at *4. The *forum non conveniens* inquiry is a multi-step analysis

---

[87] Marin requested leave to amend to the extent clarification was required concerning the roles of Frontera Inc. and Frontera S.A de C.V. R. Doc. 13 at 1, 15 & n.43. Rule 15 allows a court to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Amendment is appropriate here since Marin has pleaded a claim for relief but named an affiliated entity rather than the party whose alleged conduct gives rise to the claim. Because there exists a question of fact as to the capacity in which representatives were acting at any given time throughout this case, justice requires granting leave for Marin to clarify its claims or add the proper defendant. Moreover, amendment at this early stage in the litigation advances an efficient use of judicial resources and would not unduly prejudice the parties. Finally, Frontera Inc.'s reply did not raise an objection to Marin's requests to amend. *See* R. Doc. 23.

for which the defendant has the burden of proof on all elements. *O'Keefe v. Noble Drilling Corp.*, 347 F. App'x 27, 31 (5th Cir. 2009).

First, an alternative forum must be adequate and available. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000). A forum is available if "the entire case and all parties can come within the jurisdiction of that forum." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir. 1987), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *opinion reinstated except as to damages*, 883 F.2d 17 (5th Cir. 1989). An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *Syndicate 420 At Lloyd's London v. Early Am. Ins. Co.,* 796 F.2d 821, 828 (5th Cir. 1986)).

When an adequate and available alternative forum exists, various private-interest and public-interest factors are balanced to determine whether dismissal is warranted. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 (5th Cir. 2016). "The private-interest factors include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* at 766-67 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6). "The public-interest factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 767 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6). The plaintiff's choice of forum is usually

given significant, but not determinative, weight. *Id.* (citing *Atl. Marine Constr. Co. v. U.S. Dist. Court. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013)).

"When an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case." *Kempe v. Ocean Drilling & Expl. Co.*, 876 F.2d 1138, 1141 (5th Cir. 1989) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). A *forum non conveniens* dismissal "rests upon a court's inherent power to control the parties and cases before it and to prevent its process from becoming an instrument of abuse or injustice." *In re Air Crash*, 821 F.2d at 1153-54.

## 2. Alternative Forum

Despite Frontera Inc.'s characterization of this action as centering around "a Mexican commerce and customs dispute,"[88] the action pending before the Court ultimately centers around the existence of contracts and their terms. As it stands, this is an action by a Scottish corporation having a headquarters in Louisiana, against a Texas corporation, for claims of open account and breaches of contracts that were negotiated and partially performed in Louisiana, including one contract allegedly containing a Louisiana choice-of-law provision. Frontera Inc. contends that Mexico is a more appropriate forum because Marin's equipment is presently in the control of Mexican authorities, subject to Mexican law, in the yard of Frontera S.A. de C.V. in Mexico[89] Further, Frontera Inc. submits to jurisdiction in Mexico.[90]

---

[88] R. Doc. 8-1 at 16.
[89] Frontera Inc. offers no explanation of the process for recovering equipment from Mexican governmental custody and, therefore, it is not clear to this Court how much control Frontera S.A. de C.V. exercises over the disposition of the equipment or the complexity of such a process. However, at this time, because Frontera S.A. de C.V. is not a party to this action, and its acts have not yet been shown to be attributable to Frontera Inc., the Court does not consider Frontera S.A. de C.V.'s role directly in the *forum non conveniens* analysis.
[90] R. Doc. 23 at 13.

The Court assumes, without deciding, that an alternative available and adequate forum exists in Mexico. *See Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 727 (5th Cir. 2002) (presumption that the substantive law of a foreign forum is adequate); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) ("defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of *forum non conveniens* analysis"). However, even assuming an alternative forum, an action between a Scottish corporation headquartered in Louisiana and a Texas corporation over a contract negotiated and partially performed in Louisiana, is not the "rare circumstance" appropriate for this Court to relinquish jurisdiction. *Quackenbush*, 517 U.S. at 722. Such a determination is borne out in the balancing of the private-interest and public-interest factors and the presumption of plaintiff's choice of forum.

### 3.    Private-Interest and Public-Interest Factors

The private-interest factors weigh against dismissal. Much of the evidence regarding the alleged contracts is contained in correspondence and documents that should be easily accessible in any setting. The relevant witnesses testifying as to the existence and terms of the contracts likely will be the parties themselves: employees of Marin (based in Louisiana and the United Kingdom) and employees of Frontera Inc. (based in Texas), including Jeff McNeill, a resident of Texas.[91] Because most of the witnesses will be party employees, the Court is confident that the parties can ensure the witnesses' attendance at trial or otherwise present their testimony. Moreover, Jeff McNeill is a United States citizen over whom this Court may exercise compulsory process, if necessary.

To the extent that Mexican witnesses are required, Frontera Inc. contends only that there will be "cost and inefficiency" for those witnesses' appearance. Because there will be costs and

---

[91] R. Doc. 8-5.

inefficiencies for litigation of international business disputes in any forum, such a conclusory statement is not helpful to the analysis. Frontera Inc. does not identify a potential universe of Mexican witnesses or the relative costs of transporting such witnesses to Louisiana as compared to transporting all of Marin's and Frontera Inc.'s employees and witnesses from the United States and the United Kingdom to Mexico. Although there may be some witnesses in Mexico for whom this Court cannot exercise compulsory process, it is unlikely to be the bulk of the witnesses, and this is but one part of one factor in the balancing analysis. Additionally, this Court has jurisdiction to enforce any potential money judgment that may be established against Frontera Inc., a Texas corporation. Because the majority of the witnesses and the evidence relating to the alleged contracts are conveniently located in or near Louisiana, and this Court has sufficient control over the parties, the private-interest factors weigh against dismissal.

The public-interest factors likewise weigh against dismissal. Court congestion is not a concern in this district, beyond the general concerns of all federal courts. Indeed, the district now has all its authorized judicial seats filled and enjoys the service of two active senior judges. Additionally, Louisiana has a strong interest in the disposition of cases involving its laws, its corporate entities, and business conducted within the state. Finally, Marin alleges that at least one of the putative contracts is governed by Louisiana law pursuant to a choice-of-law provision; of course, if this provision is applicable, this forum would be at home with the law. Regardless, even if the laws of another forum govern the dispute, this fact alone does not outweigh the other factors because this Court is capable of properly applying whatever law is found to govern this dispute.

Finally, the plaintiff's choice of forum should be given significant weight. *Weber*, 811 F.3d at 767. Frontera Inc. cannot overcome this presumption simply by volunteering to submit to another forum's jurisdiction. Nor is the location of the equipment enough to outweigh the

private-interest and public-interest factors' lean toward Marin's choice of forum, especially considering this Court's dismissal of its conversion claim on the ground that Frontera S.A. de C.V. is not a party to this action. Even treating Marin as a foreign plaintiff entitled to less deference for its forum choice, *Piper Aircraft*, 454 U.S. at 256, the Court finds that Frontera Inc. has failed to make the requisite showing that its preferred forum is significantly more convenient and will better serve justice than Marin's chosen forum. *See Syndicate*, 796 F.2d at 827 (quoting *Koster*, 330 U.S. at 524). Moreover, Frontera Inc. certainly has not shown that Marin's choice of forum is disproportionately oppressive and vexatious to Frontera Inc. out of all proportion to Marin's convenience. *See Kempe*, 576 F.2d at 1141. Therefore, the Court concludes that, to best serve the convenience of the parties and the interests of justice, Marin's action should not be dismissed under the doctrine of *forum non conveniens*.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Frontera Inc.'s motion to dismiss (R. Doc. 8) is **DENIED**, in part, as to lack of personal jurisdiction and failure to state a claim on Counts One, Two, Three, and Five, and **GRANTED** as to Counts Four and Seven. Count Four (unjust enrichment) and Count Seven (conversion) against Frontera Inc. are hereby dismissed.

**IT IS FURTHER ORDERED** that Frontera Inc.'s alternative motion to dismiss or stay under the doctrine of *forum non conveniens* is **DENIED**.

**IT IS FURTHER ORDERED** that Marin is **GRANTED** leave to amend its complaint. Marin must file and serve an amended complaint within fourteen days of the date of this Order.

New Orleans, Louisiana, this 23rd day of July, 2019.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE